UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RICKY LEWIS, et al.,

                    Plaintiffs,

    v.

STATE OF NEVADA, et al.,

                    Defendants.

Case No. 3:13-cv-00312-MMD-WGC

SCREENING ORDER

This prisoner civil rights action comes before the Court for initial review under 28 U.S.C. § 1915A.

**I.    SEVERANCE**

In conducting initial review under § 1915A, the Court addresses at the outset the question of whether this action should proceed forward as a single action by multiple plaintiffs.  The manner in which the remaining requests for relief are handled follows from that initial determination.  The Court accordingly considers whether severance is warranted pursuant to Rule 21 of the Federal Rules of Civil Procedure.

The Court has been presented with a complaint asserting claims on behalf of three plaintiffs signed by all three plaintiffs and a separate pauper application for each plaintiff.

The complaint makes the following allegations.[1]

---

[1]For purposes of the present review, all nonconclusory allegations of actual fact are accepted as true.  No statement summarizing the allegations of the complaint or any other paper submitted constitutes a finding by this Court that the statement in fact is true. The Court merely is summarizing the allegations made in the papers submitted herein.
    The Court discusses the claims and defendants in further detail in screening plaintiff Lewis' claims *infra*.

Count I alleges that defendants (specified further herein) have denied the plaintiffs' rights, *inter alia*, to free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) and to equal protection of the laws because they have been denied kosher meals at Lovelock Correctional Center ("Lovelock") due to their being African-American Hebrew Israelites rather than white Jews.  Plaintiffs allege that on June 15, 2012, their prior kosher diets were discontinued because they did not opt in to become a plaintiff in a class action then certified in Case No. 2:11-cv-00883, *Howard Ackerman v. State of Nevada Department of Corrections.* Plaintiffs declined to sign an agreement instead to be provided a Common Fare diet,[2] maintaining that such a diet was not kosher.  Plaintiffs allege that white Jewish inmates still were being provided kosher meals rather than Common Fare meals.

Counts II and III present allegations by plaintiff Lewis only.

Count II alleges that a "Jane Doe" correctional officer with a last name of Mosley[3] did not allow him to heat a kosher frozen breakfast on September 15, 2011, denying him, *inter alia*, rights to free exercise of religion under the First Amendment and RLUIPA and to equal protection of the laws.

Count III alleges that Food Service Manager Mari Henry failed to comply with a February 9, 2012, court order in *Ackerman* and retaliated against Lewis and the Jewish community at Lovelock for the order.  Lewis alleges that Henry altered the kosher diets provided at Lovelock in a number of particulars as to their content and manner of delivery.

///

///

_____

[2]The federal Bureau of Prisons has been providing a Common Fare diet since late 1996 that is intended to accommodate religious dietary requirements within the constraints of budget limitations and security requirements.  *See generally Resnick v. Adams*, 348 F.3d 763, 765 (9th Cir. 2003).

[3]That is, a defendant Mosley, first name unknown (FNU).

1    Subsequent to the filing of the complaint, Lewis has been released from physical
2    custody, and his notice of change of address reflects that he is residing in Las Vegas.
3    Plaintiffs Finley and Edwards remain at Lovelock currently.

4    Prisoners seeking to bring a civil action *in forma pauperis* are subject to the
5    restrictions and requirements of the Prison Litigation Reform Act (PLRA).  One such
6    requirement is set forth in 28 U.S.C. § 1915(b)(1), which states in pertinent part that "if a
7    prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be
8    required to pay the full amount of the filing fee."  Accordingly, while a prisoner plaintiff
9    granted pauper status may be allowed to pay only an initial partial filing fee, he
10   ultimately will be required to pay the full filing fee through installment payments drawn
11   from his inmate trust account.

12   The three federal circuits that have directly considered the issue all have agreed
13   that this statutory requirement of full payment of the filing fee remains applicable when
14   multiple prisoners seek to join as co-plaintiffs in a single action, such that each prisoner
15   still must pay the full filing fee.  *See Hagan v. Rogers*, 570 F.3d 146, 155-56 (3rd Cir.
16   2009); *Boriboune v. Berge*, 391 F.3d 852, 855-56 (7th Cir. 2004); *Hubbard v. Haley*, 262
17   F.3d 1194, 1197-98 (11th Cir. 2001).[4]

18   Plaintiffs have proceeded in accordance with this requirement here, submitting a
19   separate pauper application for each plaintiff.

20   The three circuits discussed above differed, however, as to the appropriate
21   handling of the actions thereafter with regard to joinder of claims.

22   In *Hubbard*, the Eleventh Circuit affirmed a district court order dismissing a multi-
23   plaintiff action and directing that multiple separate actions instead be opened by the
24   clerk.  The appellate panel held that separate suits were required in order to satisfy the
25   requirement under the PLRA that each prisoner pay a full filing fee.  The panel rejected
26   the plaintiffs' argument that permissive joinder of the multiple plaintiff prisoner claims

27   _____

28   [4]*But cf. Tailey-Bey v. Knebl*, 168 F.3d 884, 886-87 (6th Cir. 1999) (apportioning costs between two prisoner plaintiffs).

3

was authorized under Rule 20. The panel held that "to the extent that the Rules Enabling Act, as expressed in Rule 20, actually conflicts with the PLRA, we hold that the statute repeals the Rule." 262 F.3d at 1198.

In *Boriboune*, the Seventh Circuit reversed a district court order that similarly had dismissed a multi-plaintiff prisoner action without prejudice. The panel agreed with the Eleventh Circuit that each plaintiff must pay a full filing fee pursuant to the PLRA. The panel did not agree, however, that the PLRA repealed Rule 20 by implication. The Seventh Circuit held that district courts within that circuit must accept complaints filed by multiple prisoners if the criteria for permissive joinder are satisfied but then must apply the PLRA fee payment requirements to each plaintiff separately.

In *Hagan*, the Third Circuit reversed a district court order that had dismissed all but one of the multiple plaintiff's claims with leave to file individual complaints, on the basis that the PLRA barred permissive joinder under Rule 20. In *Hagan*, fourteen (14) inmates in the Adult Diagnostic & Treatment Center in Avenel, New Jersey, had filed a joint complaint alleging that prison officials had failed to contain and treat a serious and contagious skin condition. The panel agreed with the Eleventh and Seventh Circuits that each prisoner plaintiff must pay the full filing fee pursuant to the PLRA. On the question of joinder, the Third Circuit agreed with the Seventh Circuit that the PLRA did not impliedly repeal Rule 20, thus disagreeing with the Eleventh Circuit. 570 F.3d at 152-56.

The *Hagan* panel further discussed the district court's reliance generally upon difficulties in multi-plaintiff prisoner litigation as a factor rendering joint pursuit of the litigation impracticable. The practical difficulties canvassed by the district court included: (a) logistical difficulties in each plaintiff reviewing the same unchanged draft filing and signing each paper filed, as required by the federal rules; (b) difficulties in conferring jointly regarding the litigation in the prison setting, even within a single institution, with concomitant efforts by the inmates to compel prison authorities to override security and housing decisions on account of the litigation; (c) the prospect that co-plaintiffs could be

4

1  transferred to other facilities during the possible multi-year course of the litigation,
2  making joint action even more problematic; and (d) the possibility of coercive action
3  between inmates with regard to joint litigation. The Third Circuit concluded that the
4  district court's reliance upon such factors was tantamount to a holding that prisoners do
5  not constitute "persons" under Rule 20.  So construed, the panel held that the district
6  court's reliance on these factors constituted error.  The panel noted that the facility in
7  question was only a "relatively small facility" with 600 inmates, that all of the plaintiffs
8  had signed all of the filings, and that nothing in the record suggested that joint litigation
9  would not be manageable. 570 F.3d at 156-57 & n.4.

10      At the district court level, decisions from a number of federal district courts,
11  including from this district, have come to the conclusion that severance — under Rule 21
12  — often is appropriate in multi-plaintiff prisoner cases, given the practical realities of
13  pursuing joint prison litigation within a large state prison system.  *See, e.g., Quintero v.*
14  *Palmer*, No. 3:13-cv-00008-MMD-VPC, dkt. no. 7 (D. Nev. July 1, 2013); *Jarvis v. Nye*
15  *County Detention*, No. 2:08-cv-01407-PMP-PAL, dkt. no. 14 (D. Nev. Feb. 6, 2009);
16  *Davis v. United States*, 2007 WL 2225791 (E.D. Cal. July 31, 2007); *see also*
17  *Hershberger v. Evercom, Inc.*, 2008 WL 45693 (D. Kan. Jan. 2, 2008)(similar).

18      Under Rule 21, "the court may at any time, on just terms, add or drop a party"
19  and "may also sever any claim against a party."  Severance under Rule 21 is not limited
20  solely to curing misjoinder of parties, given that the rule explicitly provides that the court
21  may sever "any" claim against a party.[5] Even if the standard for permissive joinder
22

---

23  [5]*See, e.g., Safeco Ins. Co. of America v. White House, Tenn.*, 36 F.3d 540, 545-
    46 (6th Cir. 1994); *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983); *Spencer,*
24  *White and Prentis Inc. of Connecticut v. Pfizer, Inc.*, 498 F.2d 358, 361 (2d Cir. 1974);
    *Sporia v. Pennsylvania Greyhound Lines, Inc.*, 143 F.2d 105 (3rd Cir. 1944); *CVI/Beta*
25  *Ventures, Inc. v. Custom Optical Frames, Inc.*, 896 F.Supp. 505, 506 (D. Md. 1995); *see*
    *also Acevedo-Garcia v. Monroig*, 351 F.3d 547, 560 n.5 (1st Cir. 2003) (noting prevailing
26  rule); *see generally* 7 C. Wright, *et al., Federal Practice & Procedure: Civil* § 1682, at
    474 (3d ed. 2001) ("The application of Rule 21 has not been limited to cases in which
27  parties were erroneously omitted from the action or technically misjoined contrary to one
    of the party joinder provisions in the federal rules."); 4 J. Moore, *Moore's Federal*
28  *Practice*, § 21.02, at 21-3 (3d ed. 2013) ("The text of the Rule does not, however, limit
    its operation to such situations [of improper joinder of parties].  The courts have properly
    *(fn. cont...)*

5

1  under Rule 20(a) is satisfied, district courts have the discretion to refuse joinder and

2  sever claims in the interests of avoiding prejudice and delay, ensuring judicial economy,

3  or safeguarding principles of fundamental fairness.[6] Claims may be severed if such

4  action will serve the ends of justice and further the prompt and efficient disposition of

5  the litigation.[7] A district court has broad discretion with regard to severance of claims

6  under Rule 21.[8]

7        In the present case, the Court neither makes nor need make a categorical

8  holding for all prisoner cases to determine that severance of plaintiff Finley's and

9  plaintiff Edward's claims from plaintiff Lewis' claims is appropriate under Rule 21 in this

10  particular case.[9]

11  _____

12  *(...fn. cont.)*
   concluded that they may issue orders under Rule 21 even in the absence of misjoinder
   or nonjoinder of parties, to structure a case for the efficient administration of justice . . .

13  .").

14      [6]*E.g., Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521-22 (5th
   Cir. 2010); *cf. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (even

15  when the requirements for permissive joinder under Rule 20(a) are met, a district court
   must examine whether joinder would comport with principles of fundamental fairness or

16  would result in prejudice to either side).

17      [7]*E.g., CVI/Beta Ventures, Inc.*, 896 F.Supp. at 506.

18      [8]*See, e.g., Acevedo*, 600 F.3d at 522 ("wide discretion"); *see also Coleman*, 232
   F.3d at 1297 ("broad discretion," in a Ninth Circuit case decided under Rule 20(b)); *see*

19  *generally* 7 C. Wright, *et al., Federal Practice & Procedure: Civil* § 1689, at 515-16 (3d
   ed. 2001) ("Questions of severance are addressed to the broad discretion of the district

20  court."); 4 J. Moore, *Moore's Federal Practice* § 21.02, at 21-10 (3d ed. 2013) ("The
   Rule vests great discretion in the court in determining whether . . . to order severance.").

21

22      [9]The Court has assumed that the requirements for permissive joinder under Rule
   20(a) are satisfied in this case. The Court makes this assumption based upon the

23  premise that all three plaintiffs have standing to pursue Count I. The Court has assumed
   in particular that the plaintiffs' Count I claims: (a) arise out of the same occurrence or

24  series of occurrences in which all three plaintiffs otherwise would be involved to one
   extent or another; and (b) raise a common question of law as to whether the challenged

25  action violates, *inter alia*, the First Amendment, RLUIPA and/or the Equal Protection
   Clause. That said, Counts II and III present claims by plaintiff Lewis only. The mere fact

26  that these diverse individual claims involve claims under the First Amendment, RLUIPA
   and the Equal Protection Clause would appear to be insufficient to tie the claims

27  together sufficiently for multi-party permissive joinder under Rule 20(a), separate and
   apart from the presence of Count I. Joinder of multiple unrelated claims by a *single*

28  plaintiff of course is governed by the far more expansive provision in Rule 18. All such
   joinder, however, would appear to be subject to possible severance under Rule 21
   *(fn. cont…)*

1   The Court need not, and does not, hold that the PLRA repeals Rule 20.  The Court need

2   not, and does not, hold that prisoners are not "persons" under Rule 20.  And the Court

3   need not, and does not, hold that permissive joinder of multiple plaintiffs in all prisoner

4   litigation whatsoever is impractical without exception.

5          In the present case, practical difficulties that so often have been encountered in

6   the past in joint prison litigation in the large Nevada state prison system already have

7   become manifest.  Following upon plaintiff Lewis' release from physical custody, it will

8   be exceedingly difficult for plaintiffs to efficiently file further multi-plaintiff papers in a

9   joined action.  Plaintiffs are not in a position to efficiently and effectively confer with one

10  another, review proposed papers, and then each sign papers for filing within deadlines

11  established in the case.

12         Moreover, as discussed *infra* in screening the claims, Lewis no longer has

13  standing to pursue a viable claim for injunctive relief with regard to practices at

14  Lovelock.  His claim under Count I thus is reduced to a claim for monetary damages for

15  the relevant period of time during which he was incarcerated at Lovelock and subject to

16  the alleged practices in question.  His discrete claim for monetary damages can be

17  litigated as effectively and efficiently in a separate action together with the individual

18  claims that he alleges in Counts II and III.

19         The Court therefore will sever the claims of plaintiffs Finley and Edwards from

20  those of plaintiff Lewis.  The Court will not further sever the claims of plaintiff Finley from

21  those of plaintiff Edwards at this point, however.  The Court will seek to adjudicate their

22  joint claims in a single action, subject to reconsideration of the issue if circumstances

23  should change.

24         In this regard, the Court notes that Lovelock is a multi-purpose facility that is

25  nearly three (3) times larger than the small, apparently single-purpose facility involved in

26

27  (...fn. cont.)
    where such severance is in the interests of justice and the efficient conduct of the
28  litigation.

*Hagan.* At any given time, inmates may be subject to any one of a number of widely varying classification levels within that single facility alone. Inmates further may be transferred from Lovelock to any one of five (5) other correctional facilities for males across the state, over and above numerous conservation camps, all together collectively housing nearly 12,000 inmates. It is the Court's experience that such transfers can and do happen frequently over the course of the extensive ongoing prisoner litigation in this district, a circumstance that of course is even more likely to occur where more than one plaintiff is involved.   Absent extraordinary circumstances, the Court generally is not inclined to second-guess security and housing decisions made by correctional officials in running a large statewide prison system solely because multiple inmates have joined in a lawsuit and desire to remain accessible to one another at the same facility.[10]

The Court nonetheless will not sever the claims of plaintiff Finley from those of plaintiff Edwards at this juncture, however.

Meanwhile, severance of their claims from plaintiff Lewis' claims not only will not prejudice the plaintiffs but further likely will benefit each plaintiff, given the practical difficulties of conducting joint litigation from literally opposite ends of the state. Severance will not prevent or impair their pursuit of the claims and relief sought in the joint action instead of in separate actions.   Severance will mitigate rather than cause delay in addressing their claims.

On the papers filed and in the circumstances presented in the instant case, the Court therefore finds that the claims filed by plaintiffs Finley and Edwards should be severed into a separate action pursuant to Rule 21, under the terms and conditions set forth at the end of this order.

///

_____

[10]For the particulars about the prison system, the Court takes judicial notice of the content on the state corrections department's website, at http://www.doc.nv.gov/ , under "Facilities" as well as under "Statistics" under "About NDOC."

## II.   SCREENING

The Court therefore turns to initial review.  The discussion of Count I pertains to the claims by all plaintiffs, except where noted with regard to plaintiff Lewis' claims for injunctive relief. The Court will issue an order directing further proceedings in the severed action after that action is opened and docketed.

When a "prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," the court must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

In considering whether a plaintiff has stated a claim upon which relief can be granted, all material factual allegations in the complaint are accepted as true for purposes of initial review and are to be construed in the light most favorable to the plaintiff. *See, e.g., Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).  However, mere legal conclusions unsupported by any actual allegations of fact are not assumed to be true in reviewing the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-81 (2009). That is, conclusory assertions that constitute merely formulaic recitations of the elements of a cause of action and that are devoid of further factual enhancement are not accepted as true and do not state a claim.  *Id.*

Further, the factual allegations must state a plausible claim for relief, meaning that the well-pleaded facts must permit the court to infer more than the mere possibility of misconduct:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).]  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*, at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short

1   of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*,
2   at 557, 127 S.Ct. 1955 (brackets omitted).

3   . . . . [W]here the well-pleaded facts do not permit the court to infer more
    than the mere possibility of misconduct, the complaint has alleged — but it
    has not "show[n]" — "that the pleader is entitled to relief." Fed. Rule Civ.
4   Proc. 8(a)(2).

5   *Iqbal*, 556 U.S. at 678.

6       Allegations of a *pro se* complainant are held to less stringent standards than

7   formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

8       Read liberally, Counts I, II and III state claims upon which relief may be granted

9   under the First Amendment, RLUIPA, the Equal Protection Clause, 42 U.S.C. § 1986,

10  and Article I, Section 4, of the Nevada Constitution.[11]

11      The counts otherwise do not state a claim upon which relief may be granted

12  under the remaining scattershot legal theories invoked in the complaint.

13      Counts I and III do not state a claim that is cognizable in an independent

14  separate action for contempt of court or under the inapplicable state contempt statute in

15  N.R.S. 22.010. Any proceeding brought by a party with standing to do so for an alleged

16  violation of an order in the *Ackerman* case would have to be brought in the *Ackerman*

17  case itself, which remains pending at this time. *Cf. Donovan v. Sureway Cleaners*, 656

18  F.2d 1368, 1375 (9th Cir. 1981) (a contempt proceeding is not to be regarded as an

19  independent action but instead as part of the original cause of action).[12]

20  ///

21  ///

22  _____

23  [11]Nothing in this order holds by implication or otherwise that, as a matter of actual
    fact, the Common Fare diet offered at Lovelock is not kosher. There is no requirement
24  that correctional officials first secure a court order affirming that Common Fare is kosher
    prior to offering that diet. That is, a mere absence of such a prior court order does not
    establish in and of itself that correctional officials are acting in violation of federal and
25  state requirements.

26      [12]It is subject to some question as to whether the plaintiffs would have standing
    to raise an alleged violation of an order in *Ackerman* after having declined to opt in to
27  the litigation as class members. The Court further notes that the class has been
    decertified in that action and the preliminary injunction issued earlier in the case has
28  been dissolved.

Count I does not state a claim for a violation of due process. The Due Process Clause provides no greater protection in this context than is provided under the First Amendment and the Equal Protection Clause.

Count I does not state a claim under what plaintiffs refer to as the "Bills of Pains and Penalties" clause. Plaintiffs rely upon Article I, Section 9, of the Constitution, which states in pertinent part that "[n]o Bill of Attainder or ex post facto Law shall be passed." However, Article I, Section 9, addresses action by Congress, not state governments. The equivalent provision in Article I, Section 10, instead is addressed to state government action. Whether federal or state action is involved, an impermissible bill of attainder is presented when a *legislature* passes a statute that inflicts a punishment on specified persons without a judicial trial. *See, e.g., SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d 662, 668-69 (9th Cir. 2002). Plaintiffs do not challenge a Nevada state legislative enactment that singles out specified persons for punishment without a judicial trial. They instead challenge the alleged failure of state correctional officials to provide them a diet that conforms to their religious requirements. Neither Article I, Section 9, nor Article I, Section 10, of the Constitution have anything to do with such a claim.

Count II does not state a claim under the Eighth Amendment. Delaying or depriving an inmate of one meal does not constitute cruel and unusual punishment. *Cf. Hernandez v. Denton*, 861 F.3d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without a mattress for only one night was insufficient to state an Eighth Amendment violation), *vacated on other grounds,* 493 U.S. 801 (1989).

Counts I, II, and III do not state a claim for abuse, neglect, or negligence under N.R.S. 41.1395. The statute concerns abuse, neglect or exploitation of older or vulnerable persons. Even if the Court were to assume that one or more of the plaintiffs was 60 years of age or older, the acts and omissions alleged in the complaint do not constitute abuse, neglect or exploitation of an older or vulnerable person that is actionable under the statute. An inmate is not a vulnerable person under the statute.

11

Counts I, II and III do not state a claim under N.R.S. 41.690. That statute establishes a cause of action for recovery for injuries sustained as a proximate result of the violation of a number of criminal provisions where the perpetrator was motivated by, *inter alia*, the injured party's actual or perceived race.   Nothing in the circumstances alleged in the complaint reflect in any non-frivolous sense a violation of one of the 34 possible predicate offenses — such as mayhem, stalking, kidnaping, battery or robbery — listed in N.R.S. 41.690.

Counts I, II, and III further do not state a claim for harassment under N.R.S. 200.571. This Nevada state criminal statute does not give rise to a private right of action.

Count I further does not state a claim upon which relief may be granted to the extent that plaintiffs allege that they are unable to make another alleged agreement with defendants regarding their diet because defendants allegedly violated a prior agreement.   Plaintiffs' idiosyncratic notion that they cannot make another agreement with defendants because defendants "are already in dishonor" has no legal bearing on this case.

All requests for injunctive relief terminating the employment of defendant officials and officers do not state a claim upon which relief may be granted. Even if plaintiffs prevail on the merits of their claims, they may not obtain such an order in this action. The statute cited by plaintiffs, N.R.S. 283.440, plainly applies on its face to an action for removal of a state official from office filed in a state district court.

All remaining requests for injunctive relief by plaintiff Lewis — which pertain solely to alleged practices at Lovelock — have become moot following his release from physical confinement.   He has no standing to seek injunctive relief regarding practices at a facility in which he no longer is held.   *See, e.g., Johnson v. Moore*, 948 F.2d 517 (9th Cir. 1991).

Turning to the specific defendants named, plaintiffs may not proceed against the State of Nevada and the Nevada Department of Corrections (NDOC) in federal court,

other than on claims for equitable relief under RLUIPA.  Plaintiff's claims against the State and NDOC, as an arm of the State, otherwise are barred by the state sovereign immunity recognized by the Eleventh Amendment. *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  State sovereign immunity bars suit in federal court against a State or an arm of the State regardless of the relief sought, absent a waiver of that immunity. *See, e.g., Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984).  State sovereign immunity limits the jurisdiction of the federal courts and can be raised at any time during the judicial proceedings either by the parties or by the court *sua sponte. In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999).  To the extent that plaintiffs also seek to raise state law claims, they may not pursue any claims, whether under federal or state law, against a State or an arm of the State in federal court because of state sovereign immunity. *See, e.g., Carey v. Nevada Gaming Control Board*, 279 F.3d 873, 878-78 (9th Cir. 2002); *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973-74 (9th Cir. 2004).  The complaint fails to present a claim against the State and NDOC within the jurisdiction of the Court, with the exception of claims for equitable relief under RLUIPA. *See Sossamon v. Texas*, 131 S.Ct. 1651 (2011)(RLUIPA claims).

Plaintiffs further may not proceed against Lovelock Correctional Center as a defendant.  Lovelock is a facility — a physical structure — not a juridical person or entity subject to suit.

Plaintiffs further may not recover monetary damages from the individuals named as defendants in their official capacity.[13]  First, plaintiff's claims for monetary damages under the federal civil rights statutes against the defendants in their official capacity are barred by the state sovereign immunity recognized by the Eleventh Amendment. *See, e.g., Taylor*, 880 F.2d at 1045; *Cardenas v. Anzal*, 311 F.3d 929, 934-35 (9th Cir. 2002).  The official capacity claims further fail to state a claim under § 1983 because a state

---

[13]Plaintiffs have named the individual defendants in their official, individual, private and personal capacities.  Naming defendants in private and personal capacities would appear to be wholly redundant of naming them in their individual capacity.

13

officer in his official capacity is not a "person" subject to suit under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 & n.10 (1989). With particular regard to plaintiff's claims under RLUIPA, official capacity claims under RLUIPA for monetary damages also are barred by the Eleventh Amendment and state sovereign immunity. *See Sossamon, supra.*

The Court will dismiss the deficient claims and direct further proceedings on the remaining claims in the two (2) severed actions. The Court finds that allowance of an opportunity to amend would be futile as to the deficient claims.

III.    **CONCLUSION**

It is therefore ordered that the Clerk of Court shall file the complaint and that the following claims are dismissed for failure to state a claim upon which relief may be granted: (a) all claims in all counts except for the claims under the First Amendment, the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), the Equal Protection Clause, 42 U.S.C. § 1986, and Article I, Section 4, of the Nevada Constitution; (b) all claims against the State of Nevada and the Nevada Department of Corrections except for claims for equitable relief under RLUIPA; (c) all claims against Lovelock Correctional Center; (d) all claims for injunctive relief seeking to have defendant official's employment terminated; (e) all claims for injunctive relief by plaintiff Ricky Lewis; and (f) all claims against individual defendants in their official capacity for monetary damages but not equitable relief.

It is further ordered that the Clerk shall include on the docket sheet the following defendants: Sandie, Phillips and Mosley.

It is further ordered that the claims of co-plaintiffs Edward Finley and Leodias Edwards are severed from this action.

It is further ordered that, accordingly, the Clerk shall: (1) open a separate new civil action for co-plaintiffs Finley and Edwards, for a combined total of one new civil action under one new docket number; (2) assign the new action to the same district judge and magistrate judge as in the present action, generate the same internal P-flag

14

1   assignment as in this action, and make appropriate adjustments to both case-
2   assignment "wheels" to compensate for such assignment of the new case; (3) file in the
3   new action a copy of (a) the original complaint from this action, (b) co-plaintiffs Finley's
4   and Edwards' two pauper applications, and (c) this order in the new action, with any
5   appropriate modification to show the new docket number; and (4) show that co-plaintiffs
6   Finley and Edwards are terminated as parties in the present action, such that plaintiff
7   Lewis thereafter shall be the only plaintiff remaining as a current party plaintiff in this
8   action.

9       It is further ordered that the Clerk shall send to co-plaintiffs Finley and Edwards
10  in such new action: (1) a copy of the standard paperwork indicating the docket number
11  for the newly-opened action; and (2) a copy of this order. The Court will enter an order
12  directing further proceedings in the new action after that action is opened.

13      It is further ordered that:

14      1.    A decision on plaintiff Lewis' application (dkt. no. 1) to proceed *in*
15  *forma pauperis* is deferred.[14]

16      2.    This action is stayed for ninety (90) days to allow plaintiff and
17  defendant(s) an opportunity to settle their dispute before an answer is filed or the
18  discovery process begins. During this ninety-day stay period, no other pleadings or
19  papers shall be filed in this case, and the parties shall not engage in any discovery. The
20  Court will decide whether this case will be referred to the Court's Inmate Early Mediation
21  Program, and the Court will enter a subsequent order. Regardless, on or before ninety
22  (90) days from the date this order is entered, the Office of the Attorney General shall file
23  the report form attached to this order regarding the results of the 90-day stay, even if a
24  stipulation for dismissal is entered prior the end of the 90-day stay. If the parties

25

26      [14]The Court defers also consideration of the issue of the handling of plaintiff
27  Lewis' pauper application following upon his release from physical custody. *See, e.g.,*
    *Putzer v. Attal,* No. 2:13-cv-00165-APG-CWH, dkt. no. 10 (D. Nev. Aug. 23, 2013)(the
28  PLRA fee-payment provisions continue to apply following release from physical
    custody).

1  proceed with this action, the Court then will issue an order setting a date for the

2  defendants to file an answer or other response.  Following the filing of an answer, the

3  Court will issue a scheduling order setting discovery and other deadlines.

4         3.     "Settlement" may or may not include payment of money damages.

5  It also may or may not include an agreement to resolve plaintiff's issues differently.  A

6  compromise agreement is one in which neither party is completely satisfied with the

7  result, but both have given something up and both have obtained something in return.

8         4.     If the case does not settle, plaintiff will be required to pay the full

9  $350.00 filing fee. This fee cannot be waived.  If the plaintiff is allowed to proceed *in*

10  *forma pauperis*, the fee will be paid in installments from his prison trust account.  28

11  U.S.C. § 1915(b).  If plaintiff is not allowed to proceed *in forma pauperis*, the $350.00

12  will be due immediately.  If plaintiff had sufficient funds when his pauper application was

13  filed, he may not deplete such sufficient funds from an inmate account prior to a ruling

14  on the pauper application.

15         5.     The Clerk shall electronically serve a copy of this order and a copy

16  of plaintiff's complaint on the Office of the Attorney General of the State of Nevada,

17  attention Kat Howe.

18         6.     The Attorney General's Office shall advise the Court within twenty-

19  one (21) days of the date of the entry of this order whether it will enter a limited notice of

20  appearance on behalf of the defendants for the purpose of settlement.  No defenses or

21  objections, including lack of service, shall be waived as a result of the filing of the limited

22  notice of appearance.

23         DATED THIS  6th day of January, 2014.

24

25

26  MIRANDA M. DU
    UNITED  STATES  DISTRICT  JUDGE

27

28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

RICKY LEWIS, et al.,

Plaintiffs,

v.

STATE OF NEVADA, et al.,

Defendants.

Case No. 3:13-cv-00312-MMD-WGC

REPORT OF THE OFFICE OF THE ATTORNEY GENERAL RE RESULTS OF THE 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

On _____ *[the date of the issuance of the screening order]*, the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed.  The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay.  By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case: The case was assigned to mediation by a court-appointed mediator during the 90-day stay.**  [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have reached a settlement, even if paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.)

_____ A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [enter date].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case: The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations**. [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement, even if the paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the

2

Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____          _____
                         Print                                          Signature

Address:        _____          Phone: _____

                _____          Email: _____

                _____

3